**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

MITEC PARTNERS, LLC,

    Plaintiff,

vs.

U.S. BANK NATIONAL
ASSOCIATION,

    Defendant.

No. 07-CV-2085-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.   INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.  PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*III. SUBJECT MATTER JURISDICTION* . . . . . . . . . . . . . . . . . . . . . *2*

*IV. STANDARD FOR SUMMARY JUDGMENT* . . . . . . . . . . . . . . . . *2*

*V.  SUMMARY JUDGMENT FACTS* . . . . . . . . . . . . . . . . . . . . . . . *3*

*VI. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *A.   Local Rules* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *B.   Alternative Holdings* . . . . . . . . . . . . . . . . . . . . . . . . . *11*
        *1.   Count 1* . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
        *2.   Count 2* . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
        *3.   No reasonable reliance* . . . . . . . . . . . . . . . . . . *13*

*VII. DISPOSITION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

*I.  INTRODUCTION*

    The matter before the court is Defendant U.S. Bank National Association's Motion for Summary Judgment (docket no. 20).

*II.  PRIOR PROCEEDINGS*

    On November 2, 2007, Plaintiff Mitec Partners, LLC filed a three-count Petition

at Law ("Petition") (docket no. 4) against Defendant in the Iowa District Court for Black Hawk County. Plaintiff alleges three state-law claims: negligent misrepresentation (Count 1), fraudulent misrepresentation (Count 2) and breach of the duty of good faith and fair dealing (Count 3).

On December 12, 2007, Defendant removed the case to this court, pursuant to 28 U.S.C. §§ 1441 and 1446. Defendant invoked this court's diversity jurisdiction under 28 U.S.C. § 1332. On December 19, 2007, Defendant filed an Answer (docket no. 5), in which it denies the substance of the Petition.

On January 20, 2009, Defendant filed the Motion. On February 17, 2009, Plaintiff filed a Resistance (docket no. 23). Defendant did not file a reply.[1]

Defendant requests oral argument on the Motion, but the court finds oral argument is not appropriate. The Motion is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

This court has diversity jurisdiction over the Petition, pursuant to 28 U.S.C. § 1332. For purposes of § 1332, Plaintiff is a citizen of Iowa and Defendant is a citizen of Minnesota. The amount in controversy exceeds $75,000, exclusive of interest and costs.

### IV. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it "might affect the outcome of the suit under

---

[1] A reply was not necessary because Plaintiff failed to file a "statement of additional material facts that [Plaintiff] contends preclude summary judgment . . . ." LR 56.b.3. *See* discussion *infra* Part VI.A.

2

the governing law." *Anderson,* 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see, e.g., Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## V. SUMMARY JUDGMENT FACTS

Viewing the evidence in the light most favorable to Plaintiff and affording it all reasonable inferences, *Baer Gallery*, 450 F.3d at 820, the material facts are these:[2]

---

[2] Many of Plaintiff's responses to Defendant's Local Rule 56 statements of material fact consist of either minor qualifications or general denials without citation to or support in the record. Further, Plaintiff did not file its own statement of material facts; that is, Plaintiff failed to formally distill for the court those facts that Plaintiff contends preclude summary judgment. This is a plain violation of Local Rule 56.b.3. As a consequence, the record properly before the court is largely undisputed. *See infra* Part VI.A.

3

Mitec, Inc. irradiates beef. On June 9, 2004, Defendant provided Mitec, Inc. with four loans: (1) a $400,000 term loan for purchase of irradiation equipment; (2) a $380,000 term loan to pre-fund an United States Small Business Administration ("SBA") debenture[3]; (3) a $100,000 revolving line of credit for working capital; and (4) a $200,000 line of credit for start-up working capital. In exchange, Mitec, Inc. provided Defendant with a general security interest in Mitec, Inc.'s assets. Also, three of Mitec, Inc.'s shareholders, Messrs. Tim White, Joe White and Steve Carfae, each personally guaranteed up to $100,000 in the event Mitec, Inc. defaulted on the loans.

On June 30, 2005, the SBA paid off the $380,00 term loan. On the same date, Mitec, Inc. closed on a $391,000 "504 loan" with the SBA.[4]

On July 1, 2005, Defendant and the SBA entered into a Third Party Lien Holder Agreement. The Third Party Lien Holder Agreement grants the SBA's loan priority over Defendant's two lines of credit. It also provided the SBA with notification rights in the event of an attempted foreclosure on Mitec Inc.'s property.

By May of 2006, Mitec, Inc. had defaulted on its loans. On or about May 5, 2006, Defendant transferred the three outstanding loans it had provided to Mitec, Inc. to its Special Assets division. The Special Assets Division and Mitec, Inc. unsuccessfully tried to devise a business plan to allow Mitec, Inc. to rehabilitate its loans.

Mitec, Inc. then asked Mr. Tim White to meet with Mr. Duane Strempke to attempt to forestall foreclosure. Mitec, Inc. chose Mr. Tim White because he was a practicing attorney in Cedar Rapids, Iowa. Mr. Tim White owned 1.3% of the outstanding stock and 1.5% of the outstanding options and warrants of Mitec, Inc. Mr. Strempke was one of Defendant's representatives but was not trained in the law.

---

[3] *See, e.g., United States v. Sobecki*, No. 3:96-CV-668RP, 1998 WL 175870, *2 (N.D. Ind. Mar. 26, 1998) (discussing debentures and the SBA's 504 loan program).

[4] *See supra* note 3.

The meeting did not go well for Mr. Tim White. Mr. Tim White describes his meeting with Defendant as "not a friendly meeting." He recounts that Mr. Strempke arrived late for their meeting and acted "almost like a pit bull." Mr. Strempke insisted Mitec, Inc. make whole on its obligations to Defendant. Mr. Tim White explained in vain that he was spending half of his time working on the Mitec, Inc. matter and had personally guarantied $100,000 of Mitec, Inc.'s loans to Defendant.

At some point in time after Mitec, Inc. defaulted on its loans to Defendant, Mr. Jim Peterson solicited Messrs. Carfrae, Tim White and David Bird to invest in and become members of a new company, Plaintiff. All four men became members of Plaintiff. Mr. Jim Peterson was elected Plaintiff's President. In September of 2006, Plaintiff officially registered with the Iowa Secretary of State and filed its Articles of Organization.

At present, Plaintiff consists of the following members: Messrs. Jim Peterson, Tim White, Joe White, Bird, Carfrae, Joe Peterson, Jerry Full, Guy Wendler, John Williams and Carl Schweser. All but Mr. Williams were Mitec, Inc. shareholders. Mr. Bird was on Mitec, Inc.'s Board of Directors, and Mr. Carfrae owned the Carfrae Meat Company, which housed Mitec, Inc.'s physical assets. Mr. Carfrae had also guarantied $100,000 of Mitec, Inc.'s loans to Defendant and had an option to purchase stock in Mitec, Inc.

Plaintiff's goal was to purchase Defendant's loans to Mitec, Inc. and then foreclose on and sell Mitec, Inc.'s assets for a healthy profit. Mr. Jim Peterson explained that, if Plaintiff obtained Mitec, Inc.'s assets, Mitec, Inc. shareholders who were not members of Plaintiff would be "wiped out" and have no right to receive anything from a potential sale of Mitec, Inc.'s assets.

Plaintiff moved quickly and secretly in trying to move forward on its plans. Plaintiff purposely did not inform Mitec, Inc. of its plans. Plaintiff worried that the President of Mitec, Inc., Mr. Brian Dalziel, might raise funds to pay off Mitec, Inc.'s loans to Defendant before Plaintiff seized control of Mitec, Inc.'s assets.

Plaintiff retained Attorney Robert Downer to effectuate its plan. Attorney Downer agreed to represent Plaintiff in its course of dealings with Defendant, as well as provide legal advice and the requisite due diligence in Plaintiff's prospective purchase of Defendant's loans. In turn, Defendant retained Attorney Mark Rice.

Plaintiff initially offered to purchase Defendant's outstanding loans to Mitec, Inc. for less than their face value. Defendant rejected Plaintiff's initial offer. The parties later agreed that Defendant would sell the loans to Plaintiff for the amount Mitec, Inc. owed Defendant. Attorney Downer later characterized his negotiations with Defendant as "determined."

On October 5, 2006, Plaintiff sent Defendant a "Letter of Intent" via Mr. Strempke. In the Letter of Intent, Plaintiff announced its desire to purchase the outstanding Mitec, Inc. loans from Defendant. Attorney Downer reviewed the Letter of Intent before mailing it to Plaintiff. In relevant part, the Letter of Intent states: "It is our understanding that [Defendant] has forwarded all relevant documentation to [Attorney Downer] for his review and that these documents will be received in his office today."

On October 11, 2006, Defendant signed the Letter of Intent but only after incorporating Exhibit A thereto. In relevant part, Exhibit A states: "This [Letter of Intent] is intended to set forth the general terms of the loan purchase, with final definitive terms and conditions to be set forth in an Agreement and related assignment to be prepared by [Plaintiff's] legal counsel and subject to [Defendant's] approval." Neither the Letter of Intent nor Exhibit A mention Plaintiff's plan to acquire and sell Mitec Inc.'s assets for profit.

Attorney Downer knew about the SBA's loan to Mitec, Inc. but mistakenly believed all of Defendant's loans had priority over the SBA's 504 loan. Attorney Downer only searched public records. During Plaintiff's due diligence period, Attorney Downer (1) never specifically asked Defendant about the exact loan priority between Defendant's loans

and the SBA loan[5]; (2) never contacted anyone from the SBA to collect documents on the SBA's loan; and (3) never contacted anyone from Mitec, Inc. to collect its SBA loan documentation. To the contrary, Plaintiff attempted to hide the loan purchase from Mitec, Inc.

Attorney Downer also failed to collect relevant documents from all of the members of Plaintiff. As it turns out, Mr. Carfrae had a SBA document in his possession that Attorney Downer now admits would have led him to contact the SBA prior to the closing and likely forestalled the parties' ensuing dispute. Mr. Carfrae did not provide the document to Attorney Downer, because Mr. Carfrae believed Defendant's loans had priority on the collateral and he was not aware of any documents in his possession that indicated otherwise.

Attorney Downer was aware of a telephone conversation between Messrs. Jim Peterson and Strempke. After Mr. Jim Peterson expressed concern to Mr. Strempke that the parties' transaction was proceeding rapidly, he stated "we want to make sure we understand how [the SBA loan] play[s] into this." Mr. Strempke responded: "[W]ell, we'll scrape them off if you want us to." Neither Mr. Jim Peterson nor Attorney Downer asked Mr. Strempke what he meant by this "scrap[ing]" comment. Mr. Jim Peterson (and, upon learning of the telephone conversation, Attorney Downer) interpreted Mr. Strempke's comment about "scrap[ing]" to mean that the SBA loan was junior to Defendant's loans. Mr. Strempke states his "scrap[ing]" comment was intended to convey the message that, "as with any junior lienholder [there are] processes by which [the senior lienholder] can be scraped if there isn't adequate value in the collateral to support all debt."

On October 24, 2006, Mr. Bird resigned from the Board of Directors of Mitec, Inc. Mr. Bird also informed Mitec, Inc.'s President of his intentions to join Plaintiff and its

---

[5] Plaintiff denies this statement of material fact but its citation to Attorney Downer's deposition does not contradict it.

stated purpose.

    On November 7, 2006, Plaintiff and Defendant closed on the purchase of the loans. With the representation of counsel, Plaintiff signed a fully integrated Assignment Agreement that, in part, stated:

> 4. <u>Disclaimer of Representations and Warranties</u>. [Defendant] (a) makes no warranty or representation and shall not be responsible for any statement, warranty or representation made in or in connection with the Loan Documents or for the financial condition of the Borrower or any guarantor or for the value of any collateral, . . . . (c) makes no warranty or representation and shall not be responsible for the due execution, legality, validity, enforceability, genuineness, sufficiency, repayment or collectibility of the Loan Documents or any document relative thereto or any collateral therefor or for filing, recording or taking any other action with respect to any of the foregoing documents or any collateral therefor.
>
> 5. <u>Representations by Buyer</u>. [Plaintiff] hereby acknowledges that it has, independently and without reliance upon [Defendant], its employees or agents, and instead on reliance on financial statements and other information provided by the Borrower and such other documents and information as [Plaintiff] has deemed appropriate, made the [Plaintiff's] own credit analysis and decision to enter into this Assignment Agreement . . . .
>
> 6. <u>Indemnification by Buyer</u>. [Plaintiff] shall indemnify, save and keep [Defendant] . . . harmless against and from all liabilities, demands, claims, actions or causes of action . . . . [arising out of Section 5 of this Assignment Agreement] . . . .
>
> 7. <u>Miscellaneous</u>. . . . . This Assignment Agreement contains the entire agreement between the parties relating to the subject matter hereof and supersedes all oral statements and other writings with respect to the subject matter hereof.

Def. App'x at 204-05. The Assignment Agreement does not mention Plaintiff's ultimate plans for the loans after their purchase from Defendant. At the time of signing, Plaintiff knew Mitec, Inc. was in default on the loans.

On December 5, 2006, Plaintiff served Mitec, Inc. with a notice of default. The notice gave Mitec, Inc. less than two weeks to cure the default. Mitec Inc. failed to cure the default.

Plaintiff scheduled a public sale of the collateral for January 29, 2007, with notices sent to Mitec, Inc. and all lienholders. Plaintiff and SBA, through counsel, communicated prior to the public sale, and Plaintiff eventually decided to not move forward.

Since its first attempt at a public sale, Plaintiff has never again attempted to foreclose on the loans or find a buyer for the loans it now holds. Mr. Stephen Burstkern, Executive Director of Black Hawk Economic Development Inc., explains that the SBA could not then or now prevent Plaintiff's attempt for a public sale of the assets but instead Plaintiff would simply have to provide proper notice to SBA. Plaintiff does not believe Mitec, Inc. can acquire funds to pay off the loans Plaintiff holds.

## VI. ANALYSIS

### A. *Local Rules*

In the Motion, Defendant meets its "initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323). Plaintiff thus has the affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Consistent with Rule 56(e), the Local Rules require a party who intends to resist a motion for summary judgment to file "[a] statement of additional material facts that the resisting party contends preclude summary judgment, filed as an electronic attachment to the brief under the same docket entry." LR 56.b.3.

Plaintiff did not file a statement of additional material facts in this case. In failing to do so, Plaintiff did not undertake its burden to designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court's review is confined to Defendant's statement of material facts. Facts crucial to Plaintiff's argument in its brief are, therefore, not properly before the court. For example, Plaintiff represents that Attorney Downer's public records search did not turn up the Third Party Lien Holder Agreement because neither the SBA nor Defendant had recorded the Third Party Lien Holder Agreement. Although this fact appears undisputed and there is evidence in Plaintiff's appendix to support it, Plaintiff has left the court to "'engage in the proverbial needle in the haystack,'" *Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032-33 (8th Cir. 2007) (quoting *Nw. Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003)), and hunt through Plaintiff's 72-page appendix searching for genuine issues of material fact.

"Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense." *Libel*, 482 F.3d at 1032. Defendant's failure to put the statements of material fact supporting its claim squarely before the court results in the exclusion of such evidence from consideration in the instant Order. *See, e.g., Berstler v. United Rentals, Inc.*, No. 06-CV-1019-LRR, 2007 WL 2815045, *2 (N.D. Iowa Sept. 25, 2007) (deeming the defendant's statements of material fact to be admitted after plaintiff failed to respond to them), *aff'd*, No. 07-3503, ___ F. App'x ___, 2008 WL 5048460 (8th Cir. Dec. 1, 2008). The purpose of this requirement of the Local Rules is to narrow the parties' dispute and conserve judicial resources; when a party ignores these rules the entire process jumps off the tracks. Absent the requisite statements to corral the evidence in its appendix and back up the argument in its brief, it is clear that the Motion must be granted and the Petition dismissed.

### B. Alternative Holdings

Out of an abundance of caution, the court has examined Plaintiff's brief, responses to Defendant's individual statements of material fact and appendix to decide whether summary judgment is nonetheless appropriate. After combing the record in search of a genuine issue of material fact, viewing all the evidence in the record in the light most favorable to Plaintiff, and considering the parties' arguments, the court nonetheless finds summary judgment is appropriate.

Plaintiff concedes its breach of the duty of good faith and fair dealing claim (Count 3) lacks merit and must be dismissed. Therefore, the court is only required to examine the merits of Plaintiff's negligent misrepresentation claim (Count 1) and fraudulent misrepresentation claim (Count 2).

### 1. Count 1

Defendant correctly points out several alternative reasons why Plaintiff's negligent misrepresentation claim (Count 1) must be dismissed. The court need only discuss the first proffered reason. To prove negligent misrepresentation, Plaintiff must prove "a special relationship giving rise to a duty of care." *Jensen v. Sattler*, 696 N.W.2d 582, 588 (Iowa 2005). Where the defendant was not "in the business or profession of supplying information" in a nonadversarial capacity to the plaintiff, no claim for negligent misrepresentation exists. *Id*. Here, Defendant was not in the business or profession of supplying information to Plaintiff in a nonadversarial capacity; as in *Jensen*, "this was an arms-length and adversarial transaction." It is undisputed that the negotiations between Plaintiff and Defendant were tough and determined. *Id.*; *see, e.g., Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994) (affirming dismissal of negligent misrepresentation claim in an action against a bank involving arm's length negotiations of a loan guarantee with a bank customer); *Greatbach v. Metro. Fed. Bank*, 534 N.W.2d 115, 117-18 (Iowa Ct. App. 1995) (Cady, J.) (affirming dismissal of negligent misrepresentation claim on similar facts and stating: "Our courts distinguish between persons engaged in the business of supplying

11

guidance to others in a non-adversarial capacity and commercial transactions where the parties are dealing at arm's length."). Put another way, Defendant did not have a duty under the Iowa common law to inform Plaintiff that Plaintiff's end of the bargain might not be a good one. Defendant was not required disclose to Plaintiff that the loans it was buying were not first-priority loans and the collateral in possession of Mitec, Inc. was insufficient to cover the SBA loan.

### 2. Count 2

Defendant also correctly points out several alternative reasons why Plaintiff's fraudulent misrepresentation claim (Count 2) must be dismissed. Again, the court need only discuss the first proffered reason. Plaintiff failed to plead its fraudulent misrepresentation claim with the requisite particularity that Federal Rule of Civil Procedure 9(b) requires.

"In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).

> Under Rule 9(b), a plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." In other words, the party must typically identify the "who, what, where, when, and how" of the alleged fraud. This requirement is designed to enable defendants to respond "specifically, at an early stage of the case, to potentially damaging allegations of immoral and criminal conduct." The level of particularity required depends on, inter alia, the nature of the case and the relationship between the parties. "Conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." Rule 9(b) should be read "in harmony with the principles of notice pleading."

*BJC Health Sys. v. Colum. Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (citations omitted). While the defendant usually points out the plaintiff's failure to comply with Rule 9(b) at the motion-to-dismiss stage of the proceedings, "[a] district court may enter

12

summary judgment dismissing a complaint alleging fraud if the complaint fails to satisfy the requirements of Rule 9(b)." *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1070 (8th Cir. 1995).

Count 2 is devoid of any reference to the "who, what, where, when and how" of Defendant's alleged fraudulent misrepresentation. Count 2 is little more than a cursory and conclusory recitation of the elements of a fraudulent misrepresentation claim. *See* Petition at ¶¶ 22-27. Although Count 2 incorporates by reference factual allegations recited elsewhere in the Petition, Plaintiff made no attempt to indicate which of those incorporated factual allegations support its fraudulent misrepresentation claim. Further, the incorporated factual allegations are insufficiently specific, because they only vaguely refer to an allegation that Defendant "represented through the information and documentation it provided that [Defendant's] loans were the primary lien on the collateral." *Id.* at ¶ 8.[6]

### 3. *No reasonable reliance*

In any event, under the Iowa common law a plaintiff must prove reasonable reliance for both a negligent misrepresentation claim and a fraudulent misrepresentation claim. *See, e.g., Sturm v. Peoples Trust & Savs. Bank*, 713 N.W.2d 1, 4-5 (Iowa 2006) (requiring proof of reasonable reliance for a negligent misrepresentation claim) (citing Restatement (Second) of Torts § 552 (1977)); *Smidt v. Porter*, 695 N.W.2d 9, 22-23 (Iowa 2005) (requiring proof of reasonable reliance for a fraudulent misrepresentation claim). Counts 1 and 2 each fail for lack of proof of reasonable reliance. Plaintiff's reliance on

---

[6] The court denies Plaintiff's alternative request to amend its Petition. "The court should give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice does not require leave to amend at this very late hour. Plaintiff in due diligence should have formally filed a separate motion to amend its petition much sooner in this litigation. In any event, an amendment would prove futile because there are other good reasons why Count 2 must be dismissed.

13

any of Defendant's alleged "misrepresentations" was unreasonable.

For example, Plaintiff unreasonably relied on Mr. Strempke's comment about "scrap[ing]" as a statement about the priority of Defendant's loans vis-a-vis the SBA loan. The "scrap[ing]" comment is highly ambiguous. A follow-up question was clearly in order. Further, Mr. Strempke is not a lawyer. Plaintiff unreasonably relied on the ambiguous statement of a non-lawyer as confirmation of a previously held belief about the priority status of hundreds of thousands dollars worth of loans. Plaintiff was required to do its own due diligence. It is also worth pointing out that, in the Assignment Agreement, (1) Defendant disclaimed any prior oral representations or statements about the loans to Plaintiff; and (2) Plaintiff

> acknowledge[d] that it ha[d], independently and without reliance upon [Defendant], its employees or agents, and instead on reliance on financial statements and other information provided by the Borrower and such other documents and information as [Plaintiff] has deemed appropriate, made the [Plaintiff's] own credit analysis and decision to enter into this Assignment Agreement.

Def. App'x at 204. Of course, given the clandestine nature of its ultimate plan, Plaintiff did *not* inquire of Mitec, Inc. or the SBA.

Plaintiff unreasonably assumed that every document between the SBA and Mitec, Inc. would be a public document. Plaintiff also unreasonably assumed that Defendant would inform Plaintiff that the SBA's loans had priority over Defendant's loans. In the rough-and-tumble of high-stakes commercial transactions, one party cannot reasonably expect the other party to show all his proverbial cards.

In construing Iowa law, the Eighth Circuit Court of Appeals has bluntly stated that "[a] plaintiff cannot recover if he 'blindly relies on a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Schooley v. Orkin Extermination, Co.*, 502 F.3d 759, 765 (8th Cir.

14

2007) (quoting *McGough v. Gabus*, 526 N.W.2d 328, 332 (Iowa 1995)). That is exactly what happened in this case. The falsity of any alleged misrepresentation on the part of Defendant would have been patent to Plaintiff had it utilized its opportunity to do due diligence or conduct even a cursory examination or investigation in this case. Accordingly, Counts 2 and 3 must be dismissed for lack of proof of reasonable reliance.

## VII. DISPOSITION

The Motion is (docket no. 20) is **GRANTED**. The Petition (docket no. 4) is **DISMISSED**. The Clerk of Court is directed to **CLOSE THIS CASE**. Plaintiff shall pay Defendant's costs.

**IT IS SO ORDERED.**

**DATED** this 26th day of February, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA